In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2900

United States of America,

Plaintiff-Appellee,

v.

Jose Martin Martinez,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-40062-001-JLF--James L. Foreman, Judge.

Argued April 3, 2001--Decided May 13, 2002

   Before POSNER, KANNE, and ROVNER, Circuit
Judges.

   ROVNER, Circuit Judge.  Jose Martin
Martinez pleaded guilty to one count of
conspiring to possess marijuana with
intent to distribute, 21 U.S.C. sec.sec.
846, 841(a)(1), and one count of
possessing marijuana with intent to
distribute, id. sec. 841(a)(1). Although
Martinez admitted to selling only 88.5
kilograms (203 pounds), the district
court attributed to him a much larger
amount and accordingly sentenced him to
292 months' incarceration on the
conspiracy count, and to a concurrent
term of 240 months' incarceration on the
distribution count. Martinez now argues
that his case should be remanded for
resentencing. We disagree.

   In June 1999 confidential informant
Mauricio Lopez introduced Martinez to
David Hathaway, an undercover special
agent of the Drug Enforcement
Administration. Lopez told Martinez that
Hathaway was his brother-in-law and that
Hathaway wanted to purchase marijuana. On
June 23 Martinez, accompanied by co-
conspirator Francisco Fernandez, met with
Hathaway in West Frankfort, Illinois, and
negotiated the sale of 88.5 kilograms. At
Martinez's direction, Fernandez placed a
cell-phone call to arrange for the
delivery. A short time later Ronald

Czajka and his brother Philip, both of whom were unknown to law enforcement agents at that time, arrived in a semi-truck and gave Hathaway three packages containing the marijuana.

After the delivery all of the participants left the site. Martinez drove north to Chicago, talking by phone to Hathaway while en route. Martinez told Hathaway that he could continue to provide all the marijuana he wanted, 200 pounds at a time. Martinez also stated that he used semi-trucks to transport marijuana because they effectively averted police suspicion. In addition, Martinez informed Hathaway that he was traveling to Mexico to acquire another 1,500 to 2,000 pounds of marijuana, and that he wanted to be paid for the recent delivery before embarking on the trip.

In the meantime Ronald Czajka drove west under surveillance. In order to identify him, police stopped his truck on a ruse as he was exiting West Frankfort. Once back on the road Czajka phoned Fernandez and told him that he had been stopped as part of a routine road check. Soon thereafter Martinez received word of the stop and told Hathaway. Czajka proceeded to Dallas and picked up an empty trailer, then drove to El Paso, where he loadedanother 10,000 pounds of marijuana. Czajka then picked up Fernandez in Oklahoma City, and the two delivered the stash to locations in New York and Pennsylvania.

In July 1999 a federal grand jury returned a two-count indictment charging Martinez (along with Fernandez and the Czajka brothers) with conspiring to sell "divers" quantities of marijuana, and with distributing approximately 90 kilograms of marijuana. In December 1999 Martinez entered blind guilty pleas to both counts.

At the sentencing hearing Ronald Czajka, now a government witness, admitted to delivering the 203 pounds of marijuana to Hathaway. Czajka also testified that he contacted Fernandez after his truck had been stopped, picked up 10,000 pounds of marijuana from a man named Daniel Vargas in El Paso, and delivered the marijuana to locations in New York and Pennsylvania. The government also called Lopez, who testified that Martinez told him of running 2,000 to 3,000 pounds of

marijuana every two to three months since March 1997. Hathaway testified as well, but Fernandez did not--he was a fugitive at the time of the hearing. The court, however, did allow Hathaway to testify that Fernandez had stated in an August 1999 proffer that Martinez had moved 3,000 to 6,000 pounds of marijuana every two weeks from June 1998 through mid-1999. Fernandez, represented by counsel, also stated in the proffer that he was a commercial truck driver (Hathaway later verified that he held a commercial truck license) who had personally transported marijuana for Martinez on at least two occasions. Fernandez also said that Martinez had used a van that featured a secret compartment to hide money and that he had frequently observed amounts of cash totaling approximately $100,000 in the compartment. Police had seized the van previously but discovered the compartment only after Fernandez provided the tip. According to Fernandez, Martinez also had asked him to move $2,000,000 to Martinez's ranch in Mexico in exchange for a 5% commission. Finally, Fernandez said that the 203 pounds of marijuana sold to Hathaway had been sent by Vargas from Texas. The court continued the sentencing proceedings following Hathaway's testimony.

Before Martinez was sentenced by the district court, Fernandez was apprehended and placed in police custody within the Southern District of Illinois. Neither Martinez nor the government, however, called Fernandez to testify.

The district court concluded that Martinez was responsible not only for the 203 pounds (88.5 kilograms) he admittedly sold to Hathaway, but also for the 10,000 pounds that Czajka moved from Texas; the 12,000 pounds identified by Lopez (2,000 pounds every 2 months); and an additional 75,000 pounds (3,000 pounds every two weeks for one year) elicited in Fernandez's proffer. The court therefore attributed 97,203 pounds of marijuana to Martinez, giving him a total offense level of 40/1 (the 88.5 kilograms would have yielded a total offense level of 26). The court assigned Martinez a criminal history category of I, resulting in a guideline imprisonment range of 292 to 365 months for the conspiracy count, and 240 months (the statutory maximum) for the distribution count. The court

sentenced him to concurrent terms of 292 and 240 months' incarceration.

Martinez first argues that the sentences imposed by the district court are unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi holds that factual findings (other than prior convictions) that raise a defendant's sentence above the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Id. at 476. Martinez admitted to selling approximately 90 kilograms of marijuana, yielding a statutory maximum of 20 years on both counts, see 21 U.S.C. sec. 841(b)(1)(C). The court, however, sentenced him to 292 months for the conspiracy count, 52 months beyond the statutory maximum.

Because Martinez did not raise this Apprendi issue in the district court, we review his challenge for plain error. See, e.g., United States v. Alanis, 265 F.3d 576, 589 (7th Cir.), petition for cert. filed, 70 U.S.L.W. 3429 (U.S. Dec. 5, 2001) (No. 01-904). Under this standard, Martinez must establish (1) there was error; (2) the error was plain; (3) the error affected a substantial right; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. See id. Here, Martinez cannot prevail under the fourth prong. The district court's error did not seriously affect the fairness of the proceeding because the court could have imposed the same punishment simply by imposing consecutive sentences. See U.S.S.G. sec. 5G1.2(d) (instructing courts to impose consecutive sentences to achieve the total punishment appropriate to the convictions). As a result, the court's error did not result in a miscarriage of justice that warrants reversal. See United States v. Knox, No. 01-3099, 2002 WL 745990, at *1 (7th Cir. Apr. 29, 2002); United States v. Brough, 243 F.3d 1078, 1080-81 (7th Cir.), cert. denied, 122 S. Ct. 203 (2001); United States v. Parolin, 239 F.3d 922, 929-30 (7th Cir.), cert. denied, 533 U.S. 923 (2001).

Martinez's next challenge, factual rather than constitutional, is also unpersuasive. He contends that the district court assigned too much

marijuana as relevant conduct under the sentencing guidelines, and that as a result his prison sentences are too severe. In determining a drug offender's base offense level, a district court considers quantities of drugs that are not specified in the count of conviction but were part of the same course of conduct or common scheme or plan as the offense of conviction. See U.S.S.G. sec. 1B1.3(a)(2); United States v. Huerta, 239 F.3d 865, 875 (7th Cir. 2001). We review the court's drug-quantity-calculation deferentially, only for clear error. Huerta, 239 F.3d at 875. In calculating the quantity of drugs attributable to a defendant, sentencing courts may consider a wide range of information, including hearsay, so long as it bears "sufficient indicia of reliability to support its probable accuracy." United States v. Taylor, 72 F.3d 533, 543 (7th Cir. 1995).

Martinez challenges three separate quantities of drugs earmarked by the district court as relevant conduct. First, he questions the 10,000 pounds added as a result of Ronald Czajka's testimony. The court, however, did not clearly err by including the sale of the 10,000 pounds because it was part of the same common scheme and plan as the charged offenses. The later transactions occurred immediately after the Hathaway deal, involved the same dealers, and used the same method (delivery by semi-truck). Moreover, Martinez was kept abreast of Czajka's activity after the West Frankfort deal was complete. Such evidence sufficiently ties Martinez to the 10,000 pounds of marijuana, and the court did not clearly err by including it as relevant conduct.

Martinez also challenges the 12,000 pounds identified by Lopez. At the sentencing hearing Lopez, who met Martinez in January 1997, testified that Martinez had told him that he regularly moved large quantities of marijuana--two to three thousand pounds every two to three months since March 1997. Lopez also told the court that he arranged the Hathaway transaction and that Martinez had told him after the deal that he was headed back to Mexico to secure additional marijuana. Contrary to Martinez's argument, the court did not clearly err by attributing to him the marijuana identified by Lopez. The court

stated explicitly that it found Lopez to be credible despite vigorous cross-examination, and Martinez has not provided us with a compelling reason to disturb the court's credibility determination. See United States v. Johnson, 227 F.3d 807, 813 (7th Cir.) (reviewing court gives special deference to findings based on credibility determinations, which can almost never be clear error), cert. denied, 532 U.S. 1024 (2001); United States v. Berthiaume, 233 F.3d 1000, 1002 (7th Cir. 2000) (same).

The 75,000 pounds gleaned from Fernandez's proffer is more troubling because the evidence the district court relied on was hearsay. But though Martinez is correct that the 75,000 pounds identified in Fernandez's proffer accounted for a large portion (77%) of the total drug quantity, that amount added very little to his offense level. As previously discussed, the district court properly attributed 22,203 pounds of marijuana to Martinez, which included amounts from the deal with Hathaway, as well as the activity described by Ronald Czajka and Lopez. That amounts to 10,071 kilograms, which would place Martinez's base offense level at 36, see U.S.S.G. sec. 2D1.1, and his total offense level at 38, yielding a guideline imprisonment range of 235 to 293 months (he was sentenced to 292 months' incarceration). The addition of 75,000 pounds therefore resulted in only a two-level increase in his offense level, yielding a guideline imprisonment range of 292 to 365 months. Consequently, Martinez could have received the same sentence without taking into account the 75,000 pounds, and his assertion that the court relied on hearsay to greatly increase the severity of his punishment is simply untrue. The tail did not wag the dog.

Because Martinez dramatically overstates the impact that the 75,000 pounds had on his possible sentences, his challenge to the court's reliance on hearsay loses steam. And the mere fact that the court relied on hearsay to calculate a higher offense level is not clear error. As we have repeatedly explained, hearsay is permitted at sentencing if it is reliable; reliability may be established by corroborating evidence. See, e.g., United States v. Thomas, 280 F.3d 1149, 1154 (7th Cir. 2002). Police were able to

independently verify several offerings made by Fernandez--agents located the secret compartment in the van, seized over $31,000 in cash belonging to Martinez in Texas, and discovered that Fernandez had accurately provided Daniel Vargas's phone number. Moreover, Fernandez's description of Martinez's operation (using semi-trucks to transport marijuana from Texas) is consistent with that provided by Ronald Czajka, Lopez, and Hathaway. In light of the live testimony provided by Lopez and Czajka, which established that Martinez ran significant amounts of marijuana, we believe that Fernandez's proffer was sufficiently corroborated and thus reliable.

Finally, Martinez contests the voluntariness of his guilty pleas, arguing that the district court did not comply with Federal Rule of Criminal Procedure 11. Because Martinez did not move to withdraw his guilty pleas, we review the plea colloquy only for plain error, see United States v. Vonn, 122 S. Ct. 1043 (2002), employing a "totality of the circumstances" analysis to determine whether any Rule 11 violations would have likely affected his willingness to plead guilty, see United States v. Fernandez, 205 F.3d 1020, 1024 (7th Cir. 2000). Here, there was no plain error. Although the district court did not inform Martinez regarding the statutory maximum for each offense, see Fed. R. Crim. P. 11(c)(1), the prosecutor did, putting Martinez on notice of the potential consequences of his pleas. See United States v. Godwin, 202 F.3d 969, 972 (7th Cir. 2000). Moreover, though the court did not explain the elements of the two drug offenses, it adequately informed Martinez of the nature of the charges, see Fed. R. Crim. P. 11(c)(1), and Martinez, represented by two lawyers, agreed that the government would be able to prove that he committed the charged offenses. Martinez's representations during the plea colloquy that he understood the charges and the consequences of his guilty pleas are presumed truthful. See United States v. Standiford, 148 F.3d 864, 868-69 (7th Cir. 1998).


AFFIRMED.


FOOTNOTE

/1 Martinez's total offense level included a two-level upward adjustment for obstructing justice, see U.S.S.G. sec. 3C1.1, after Martinez threatened to have Ronald Czajka killed in prison if he testified at the sentencing hearing. Martinez does not challenge that aspect of his sentences.