**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter C. BOWERS, Defendant–
Appellant.**

No. 01–2980.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 2002.

Decided June 27, 2002.

Before MANION, ROVNER and WILLIAMS, Circuit Judges.

## ORDER

Peter C. Bowers pleaded guilty to one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Although Bowers admitted responsibility for less than 200 grams of cocaine, the district court attributed to him over 500 grams and accordingly sentenced him to 68 months' imprisonment. Bowers challenges the district court's drug quantity calculation, and we affirm.

## Background

Police arrested Bowers after observing him sell what turned out to be 5.622 grams of cocaine. Although a grand jury returned a two-count indictment charging Bowers with both possession with intent to distribute and conspiracy to possess and distribute cocaine, the conspiracy count was dismissed after Bowers pleaded guilty to the possession charge.

The probation officer concluded in his presentence report (PSR) that Bowers's offense conduct was part of an on-going conspiracy to sell cocaine. Based on police interviews and grand jury testimony of several different witnesses, the probation officer calculated that Bowers should be held responsible for possessing and distributing 2111.75 grams of cocaine. The

PSR identifies the following buyers and amounts of cocaine purchased from Bowers to support the relevant conduct calculation:

Rod McNamara—5.25 grams

Gordon Wilbur—30.00 grams

William Greene—42.50 grams

LeRoy McNamara—54.00 grams

Terry Klemke—225.00 grams

Mary Berg—500.00 grams

Nandra Lee—1255.00 grams (includes sales to her husband, Steve)

Bowers objected to the drug quantities attributed to him, asserting instead that the correct amount of relevant conduct should be 192 grams, although it is unclear how he arrived at that figure. He specifically denied selling any cocaine to Lee, her husband, or Klemke. At the sentencing hearing, the government elicited testimony from Berg and Klemke to support the PSR's drug quantity calculation: the government attempted to subpoena Lee as well, but she could not be located. Bowers himself also testified.

At the conclusion of the hearing, the district court found that Bowers should be responsible for a total of 500 to 2000 grams of cocaine as relevant conduct, resulting in a base offense level of 26. After adjusting the offense level for obstruction of justice, applying Bowers's criminal history category III, and departing downward from the recommended range because of time Bowers already served in state custody, the district court imposed a 68–month prison sentence.

Bowers appeals, challenging the district court's drug quantity calculation. In total, Bowers admits responsibility for 187.37 grams of cocaine, which encompasses the 5.622 grams he was seen delivering; the PSR reports from the McNamaras, Greene, and Wilbur; and Klemke's testi-

mony at sentencing.[1] Bowers argues, however, that he is entitled to resentencing because the district court erred in crediting Berg's testimony and in calculating the amount of cocaine he sold to the Lees.

## Analysis

We review deferentially the district court's calculation of the drug quantity attributed to Bowers as relevant conduct, *United States v. Martinez*, 289 F.3d 1023, 1027–28 (7th Cir.2002), reversing only upon a finding of clear error, *United States v. Crowley*, 285 F.3d 553, 561–62 (7th Cir.2002). In doing so, we refrain from second-guessing the district judge, *United States v. McEntire*, 153 F.3d 424, 431 (7th Cir.1998). and must affirm unless we are left with a "definite and firm conviction that a mistake has been committed," *United States v. Huerta*, 239 F.3d 865, 875 (7th Cir.2001) (internal quotations and citation omitted).

Bowers challenges the district court's drug quantity calculation on several fronts. Bowers first disagrees with the district court's decision to credit Berg's testimony, claiming that information from her is unreliable. He next argues that the amount attributed as sales to Lee and her husband is not adequately supported.

### 1. Mary Berg

Despite the immunity she received for her testimony, Berg stated that she was not comfortable testifying because of her friendship with Bowers, and she seemed reluctant to answer questions. She claimed not to remember how long she had known Bowers, how many times she had purchased cocaine from him, or how much cocaine she bought. The government introduced the transcript of Berg's testimony before the grand jury two years earlier and reviewed it with her on the stand. Although Berg stated that she "barely" remembered testifying before the grand jury and could not recall the exact questions and answers from her appearance, she affirmed that she had reviewed the grand jury transcript and that she had testified truthfully and accurately before the grand jury. After refreshing Berg's memory several times, the government elicited confirmation of her grand jury testimony: she purchased between three and seven grams of cocaine from Bowers on approximately 100 different occasions.

On cross-examination Bowers's attorney uncovered that Berg was taking several prescription medications to control her bipolar and manic-depressive mood swings at the time she testified before the grand jury. Berg commented at the sentencing hearing that those drugs affected her memory insofar as "[s]ometimes it's hard just to remember what happened last week, let alone two years ago or four years ago or five." Berg also stated that she was taking that medication during the years she purchased cocaine from Bowers, while she also drank heavily on a regular basis and ingested the cocaine she bought from Bowers. Berg also asserted that she was unable to recall exactly where she worked during this time.

The district court ultimately credited Berg's testimony and attributed to Bowers 500 grams of cocaine from the transactions Berg described. In doing so, the court recognized that Berg "was extraordinarily reluctant about her testimony today and tried to avoid giving direct answers, [but]

---

1. Although the PSR reports that Klemke purchased 225 grams of cocaine from Bowers, Klemke reduced that figure to only 50 grams during his testimony at the sentencing hearing. At sentencing Bowers continued to deny any drug transactions with Klemke, but on appeal he concedes the 50 grams attributed to him based on Klemke's testimony.

she eventually confirmed that she had made at least a hundred purchases as she had testified at the grand jury."

■ On appeal Bowers challenges the district court's decision to credit Berg's testimony, claiming that her substance abuse, memory problems, and inconsistent statements render her testimony unreliable. Information used to sentence criminal defendants must bear "sufficient indicia of reliability to support its probably accuracy." *Martinez*, 289 F.3d at 1028 (internal quotations and citations omitted). A district court may consider hearsay and other evidence not admissible at trial, *United States v. Galbraith*, 200 F.3d 1006, 1011–12 (7th Cir.2000), and may credit testimony from an "admitted liar [or] convicted felon," *McEntire*, 153 F.3d at 436 (internal quotations and citations omitted). We afford the district court's credibility determinations "exceptional deference," *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir.2000), and will not disturb such decisions without a compelling reason to do so, *Martinez*, 289 F.3d at 1028.

Although Bowers claims that he is not asking this court to reevaluate Berg's credibility, that is precisely what he seeks on appeal. He maintains that, because the district court did not explicitly mention Berg's substance abuse and memory problems, the district court did not consider those factors in assessing credibility. Again, however, without compelling reason, we will not overturn a sentencing court's decision to credit the testimony of a particular witness. *Martinez*, 289 F.3d at 1028. Moreover, despite her claims that she could not recall her grand jury testimony, Berg ultimately affirmed her statements before the grand jury about the amount of cocaine she bought from Bowers. And although she testified that she did not remember much from the relevant time period, she did not mention such difficulties before the grand jury and she asserted at sentencing that her grand jury testimony was truthful and accurate.

Bowers also complains that the district court failed to reconcile inconsistencies between Berg's testimony at the sentencing hearing and the testimony she gave before the grand jury. It is true that we require a "sufficiently searching inquiry" into the government's evidence where witnesses make inconsistent statements. *Galbraith*, 200 F.3d at 1012. We have also held, however, that discrepancies or inconsistent prior statements do not, as a matter of law, render a witness's testimony incredible. *McEntire*, 253 F.3d at 435. Moreover, it appears in this case that the "inconsistencies" Bowers identifies are not in fact true contradictions. For example, several times Berg testified that she could not remember certain facts—how many times she bought cocaine from Bowers or in what quantities. Bowers asserts that these responses are inconsistent with Berg's grand jury testimony, when in fact, after being reminded of her grand jury testimony, Berg concurred with her previous statements.

■ Finally, Bowers maintains that the district court erred in not making a conservative estimate of drug quantity from Berg's testimony. But Berg's grand jury testimony and her affirmation of those previous statements during the sentencing hearing clearly support the district court's decision to ascribe 500 grams to Bowers from Berg's statements. Berg testified before the grand jury that she engaged in approximately 100 drug transactions with Bowers, each time purchasing between three and seven grams of cocaine. Moreover, Berg agreed that the approximate amount of drugs involved was 500 grams. At sentencing, Berg affirmed those answers as being accurate and true, and she agreed that her purchases from Bowers

ranged from one to seven grams. Reliance on drug quantity estimates like these is perfectly acceptable, *McEntire*, 153 F.3d at 438, and given Berg's testimony there is no clear error in the district court's calculation.

### 2. Nandra Lee

■ Having been unsuccessful in its efforts to subpoena Lee to testify at the sentencing hearing, the government introduced as evidence Lee's prior testimony before the grand jury. Lee had previously testified that she knew Bowers for about five years and, during that time, had purchased cocaine from him five to ten times, usually in one- or two-gram quantities. She further testified that her husband bought cocaine from Bowers approximately 250 to 300 times, usually in five-gram amounts. Using the minimum of each estimate range, the government argued that this testimony attributed to Bowers 1255 grams of additional cocaine.

In his written objections to the PSR, Bowers denied selling cocaine to either Lee or her husband. While testifying at the sentencing hearing, however, he admitted selling drugs to Steve but again denied any sales to Lee.

The district court, after accepting the 500 grams from Berg's testimony and the 50 grams from Klemke's statement, stated, "Even taking a thousand grams from the Lees' purchases, which I think is extraordinarily favorable to Mr. Bowers, we're still well over 500 grams, the basic offense level of 26." Later when Bowers complained about the Lee's absence from the sentencing hearing, the district court replied that "essentially I have discounted that testimony anyway. I'm not taking that into consideration" because the drug quantity already accepted exceeded 500 grams.

On appeal Bowers asserts that the district court's random reduction of cocaine associated with the Lees was clearly erroneous because the district court failed to logically explain why it believed only 20% of Nandra's testimony. Bowers's protests seem unnecessary, however, given the district court's later statement that it did not need to consider any of the drug sales to the Lees in order to reach the 500–gram category. Indeed the transcript makes clear that the district court was not in fact adding only a portion of the Lees's purchases to the drug quantity calculation. Instead, it appears that the district court was simply *responding* to an argument offered by the government at sentencing in an effort to be conservative in the drug quantity estimates. The government had previously argued:

> So even if we presume some of [defense counsel's] argument has some merit, that Nandra Lee overestimated the amounts, even if we took a thousand grams off of what Nandra Lee had to say and just took 255, a small portion of what she had to say in her grand jury testimony, [Bowers] would still be within that very same category of 500 to 2,000 [grams, base offense] level 26.

In determining Bowers's sentence, the district court addressed that suggestion by asserting that it was extremely generous to Bowers and that it was unnecessary given that other testimony already resulted in a drug quantity over 500 grams. And the court's later comments make clear that it did not consider Lee's testimony.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.