UNITED STATES of America,
Plaintiff–Appellee,

v.

Lincoln ALEXANDER, Defendant–
Appellant.

No. 01–2342.

United States Court of Appeals,
Seventh Circuit.

Argued March 4, 2003.

Decided March 10, 2003.

Rehearing Denied March 31, 2003.

Before BAUER, EVANS, and
WILLIAMS, Circuit Judges.

ORDER

Lincoln Alexander pleaded guilty to distributing over 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1), and the district court sentenced him to 262 months' imprisonment. On appeal Alexander argues that the court erred when it included 52 kilograms of cocaine as relevant conduct. Because the court did not err in its drug calculation, we affirm.

FBI and Illinois law enforcement officials arranged for confidential informant Tory Clay to purchase cocaine from Alexander and his girlfriend, Peggy Marie Franco. On October 13, 1997, Alexander

and Franco drove from Chicago to Springfield, Illinois, where they met with Clay. Authorities arrested them and found 623.9 grams of cocaine in Franco's purse. Alexander and Franco agreed to cooperate with the FBI.

Immediately after their arrests in Springfield, Alexander and Franco were questioned by FBI special agents O'Neal and Adams. Alexander told Agent O'Neal that Clay had purchased approximately two kilograms of cocaine from him in the past. He also told the agent that, at the same time he was selling to Clay, he was "associated" with "Junebug" Campbell and knew that Campbell "travel[ed] to the State of Texas and purchase[d] from twenty (20) to forty (40) kilograms of cocaine ... every two (2) weeks and sometimes each week of the month." According to Alexander, Campbell used cars with hidden compartments to transport the cocaine from Texas to Chicago. Alexander admitted that on one occasion he flew to Texas to purchase $14,000 of cocaine from Campbell.

In an interview with Agent Adams conducted separately from Alexander, Franco confirmed Alexander's association with Campbell. According to Franco, Campbell traveled to Texas about every other week to get twenty to thirty kilograms of cocaine and then brought it to Chicago in vehicles with concealed compartments. Franco stated that Campbell had been supplying Alexander with a portion of this cocaine since Alexander "got out of jail in February of 1996," at a rate of "at least two to three kilos ... approximately every two weeks." In addition, Franco admitted that Campbell supplied the cocaine that she and Alexander delivered to Clay when they were arrested–she said she met Campbell "at the corner of Prairie close to Ashland in Chicago" in order to get the cocaine.

At the sentencing hearing, the government presented two witnesses to prove Alexander's long-term, large-scale distribution of cocaine. Clay testified that he began purchasing cocaine from Alexander in late 1996 or early 1997 and admitted to buying at least three kilograms. He also testified that Alexander received cocaine from someone who drove it up from Texas. Agent Adams testified that both Franco and Alexander admitted that Campbell was the supplier. The agent also testified that Franco estimated Campbell had supplied Alexander with approximately two to three kilograms every two weeks from February 1996 to October 1997. Finally, Adams testified that when authorities executed a search warrant at Alexander and Franco's apartment in March 1999 they found what Franco identified as Alexander's drug ledger, which reflected drug transactions totaling approximately $2.75 million.

The court attributed 55.6 kilograms to Alexander, for a base offense level of 36, and determined the guideline imprisonment range to be 262 to 327 months based on a total offense level of 36 and a criminal history category of IV. The court added three kilograms of cocaine to the 623.9 grams Alexander had when he was arrested because it deemed reliable Clay's sentencing hearing testimony about his cocaine purchases from Alexander. The court also included 52 kilograms based on Franco's statement that Campbell had been regularly supplying Alexander with cocaine. The court deemed the figure reliable because it had been adjusted to correct for Franco's mistaken belief that Alexander had been out of prison trafficking in drugs longer than he really was. The court also thought that Franco's statement was reliable because Alexander himself had admitted that Campbell was a supplier and because Franco's statement had come

in through the interviewing FBI agent. Finally, except for some modifications not relevant to this appeal, the district court adopted the probation officer's findings and calculations.

When determining a drug offender's base offense level under the sentencing guidelines, a district court must consider the amount of drugs related to the same course of conduct or common scheme as the charged offense in addition to the amount of drugs directly related to the charged offense. U.S.S.G. § 1B1.3(a)(2); *United States v. Martinez*, 289 F.3d 1023, 1027 (7th Cir.2002). The government must prove this relevant conduct by a preponderance of the evidence, *United States v. Noble*, 246 F.3d 946, 951 (7th Cir.2001), and the court may consider hearsay evidence as long as it bears sufficient indicia of reliability, *Martinez*, 289 F.3d at 1028–29. The sentencing court must state the reasons supporting the inclusion of a quantity of drugs as relevant conduct, *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir.2000), and this court will review the district court's factual determination as to drug quantity for clear error, *Martinez*, 289 F.3d at 1027.

On appeal Alexander disputes the 52 kilograms attributed to him because of Franco's statement; Franco should have been deemed unreliable, he says, because she told the interviewer that Campbell was supplying him drugs in February 1996 when he was still in prison, and because she claimed to have met Campbell near Prairie Avenue and Ashland Avenue, which do not intersect. Alexander argues that Franco's statement is "incredible as a matter of law," and at times both parties approach this case as if the district court had made a *credibility* determination about Franco. That focus, however, misses the mark.

We defer to a sentencing court's credibility determinations because it is in a better position to observe witnesses. *See, e.g., United States v. Smith*, 308 F.3d 726, 746 (7th Cir.2002). But Franco did not testify at the sentencing hearing–the sentencing court relied upon her post-arrest statement as recounted in the PSR and the testimony of FBI agent Adams. Since the court did not observe Franco testify, her *credibility* is not exactly the concern. Instead, Alexander is really challenging the court's findings as to the *reliability* of Franco's hearsay statement. *See United States v. Mayberry*, 272 F.3d 945, 948–49 (7th Cir.2001) (sentencing court may rely upon hearsay statement offered through agent's testimony so long as the statement bears sufficient indicia of reliability). To be precise, then, the reliability of Franco's hearsay statement, rather than her credibility, is at issue.

Hearsay testimony bears sufficient indicia of reliability when it is corroborated by other evidence. *See Martinez*, 289 F.3d at 1028–29. Here, Alexander's post-arrest statement corroborates Franco's statements. He confirmed Franco's statement that Campbell was his supplier when he admitted his "association" with Campbell and that he traveled to Texas with money to purchase cocaine from Campbell. Further, Alexander and Franco, who were interviewed separately, provided identical accounts of how Campbell trafficked in cocaine.

Franco's hearsay statement is further corroborated by Clay's sentencing hearing testimony and the drug ledger. Clay testified that Alexander got his cocaine from someone who brought it up from Texas, which is consistent with Franco's statement. The drug ledger found in Franco's apartment and identified by Franco as Alexander's ledger corroborates Franco's hearsay statements regarding the scope of Alexander's drug distribution.

Agent Adams testified that the ledger accounted for about $2.75 million in drug transactions, and the probation officer stated that at one time Alexander had sold one kilogram of cocaine for $21,500. The ledger also contains dates from 1998, placing some of the transactions after Alexander's 1997 arrest but before his sentencing, and corroborating that at the time of his arrest in Springfield he was engaging in a large-scale drug operation. *Cf. United States v. Hillsman*, 141 F.3d 777, 783 (7th Cir.1998) (district court did not err when it considered drug ledger with just one date that fell within charged drug conspiracy). The district court, therefore, did not err when it found Franco's hearsay statement reliable.

Alexander also argues that the district court failed to specifically state why the 52 kilograms of cocaine were sufficiently related to his charged conduct when it attributed that amount to his relevant conduct, but this objection fails. Although we require a district court to explicitly state how the relevant conduct relates to the charged conduct, that obligation is met if, as was the case here, the court adopted the probation officer's findings and considered the government's argument regarding the necessary relationship. *United States v. Williams*, 272 F.3d 845, 852 (7th Cir.2001). The PSR contains the facts establishing the necessary relationship between Alexander's cocaine sales to Clay and Campbell's supplying drugs to Alexander. Campbell routinely supplied Alexander, and Alexander routinely supplied other dealers, including Clay, and Franco stated that she obtained the cocaine that resulted in the charged conduct from Campbell.

AFFIRMED.