**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alan P. KLIMAS, Defendant–Appellant.**

**No. 02–4268.**

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 20, 2003.

Decided Aug. 21, 2003.

Daniel J. Graber, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Alan P. Klimas, pro se, Manchester, KY, for Defendant–Appellant.

Before BAUER, KANNE, and EVANS, Circuit Judges.

## ORDER

Alan Klimas pleaded guilty to one count of conspiracy to possess and distribute at least five kilograms cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 300 months' imprisonment and five years' supervised release. Klimas appeals, but his appointed counsel moves to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to discern a nonfrivolous issue for appeal. Klimas has submitted a response under Circuit Rule 51(b), arguing that his guilty plea was involuntary, that the district court improperly denied his motion for a downward departure, and that he received ineffective assistance of counsel. Because we conclude that all of the potential issues identified by counsel and Klimas are frivolous, we grant counsel's request to withdraw and dismiss the appeal.

Counsel first considers whether Klimas could argue that his guilty plea should be set aside because of noncompliance with Federal Rule of Criminal Procedure 11. In his Rule 51(b) response Klimas suggests that he wishes to withdraw his guilty plea, so counsel properly considered this potential issue. *See United States v. Knox,* 287 F.3d 667, 670–71 (7th Cir.2002). But because Klimas never moved to withdraw his guilty plea in the district court, we would review this argument for plain error. *See United States v. Vonn,* 535 U.S. 55, 59, 122 S.Ct. 1043, 152

L.Ed.2d 90 (2002); *United States v. Martinez*, 289 F.3d 1023, 1029 (7th Cir.2002).

■ Counsel asserts that the district court complied with Rule 11, and we agree. The district court explained the nature of the charge and the application of the sentencing guidelines, Fed.R.Crim.P. 11(b)(1)(G), (b)(1)(M), and discussed the rights Klimas would waive by pleading guilty, including the right to a jury trial, to confront and cross-examine witnesses, and to testify on his own behalf, Fed.R.Crim.P. 11(b)(1)(C), 11(b)(1)(E). The district court also verified that Klimas pleaded guilty voluntarily, that he was not forced or coerced into pleading guilty, and that he had sufficient opportunity to discuss with his attorney the consequences of pleading guilty. Fed.R.Crim.P. 11(b)(2). Additionally, the district court insured that there was a sufficient factual basis for the plea, Fed.R.Crim.P. 11(b)(3), and advised Klimas about the applicable mandatory minimum and maximum penalties, Fed. R.Crim.P. 11(b)(1)(H), 11(b)(1)(I). Although the district court failed to advise Klimas of the effect of supervised release, *see* Fed.R.Crim.P. 11(b)(1)(H), that omission was not plain error because the combined total of imprisonment and supervised release–360 months–is less than the statutory maximum term of life imprisonment he was told about in the plea agreement, *see United States v. Schuh*, 289 F.3d 968, 975 (7th Cir.2002).

■ In his Rule 51(b) response Klimas disputes his guilt and contends that he pleaded guilty in response to threats and coercion by his trial counsel. But as noted above, at the change of plea hearing Klimas confirmed under oath that his plea was voluntary. And after the government proffered its evidence, the district court thoroughly questioned Klimas about his guilt, confirming that he agreed with the evidence and admitted having done everything alleged. Since we presume his responses at the hearing to have been truthful, *see Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir.2000), Klimas cannot now deny them. Further, we would uphold Klimas's guilty plea unless he can identify an independent reason why he should not have been convicted to show that any Rule 11 violation resulted in a miscarriage of justice. *See United States v. Driver*, 242 F.3d 767, 771 (7th Cir.2001). Klimas has not done so. Accordingly, we agree with counsel that an appeal based on the propriety of the guilty plea would be frivolous.

Counsel also considers whether Klimas could challenge his prison sentence on appeal, focusing primarily on four findings made by the district court: the calculation of the drug quantity; the imposition of upward adjustments for his role as leader, U.S.S.G. § 3B1.1(a), and for possessing a dangerous weapon, *id.* § 2D1.1(b)(1); and the denial of a downward departure. Klimas, in his response, also challenges these findings. We would review the drug-quantity calculation and the imposition of the upward adjustments for clear error. *See United States v. Fudge*, 325 F.3d 910, 919 (7th Cir.2003) (drug-quantity calculation); *United States v. Hernandez*, 330 F.3d 964, 990 (7th Cir.2003) (role as a leader and possession of dangerous weapon).

■ With regard to the drug-quantity calculation, the district court adopted the findings proposed in the presentence report (PSR) and concluded that Klimas was responsible for distributing approximately fifty kilograms of cocaine. We agree with counsel that the court relied on evidence bearing sufficient indicia of reliability to calculate that amount. *See United States v. Morrison*, 207 F.3d 962, 967 (7th Cir. 2000). After evaluating information from two co-conspirators, the government concluded that Klimas actually had moved

more than 150 kilograms between May and December 1999. Specifically, one co-conspirator told the grand jury that Klimas distributed anywhere between twelve and twenty kilograms weekly during that period, and another testified that twice a week for several months he distributed between three and five kilograms for Klimas in a different geographic area. In his Rule 51(b) response Klimas argues that the district court should not have relied on his co-conspirators in calculating the cocaine quantity because they had incentive to lie about his involvement. At sentencing the district court noted Klimas's argument but aptly observed that the government had adequately compensated for the "imprecise nature of the estimated drug amounts" by reducing to fifty the higher 150–kilogram quantity reported by Klimas's co-conspirators. Thus we agree with counsel that any challenge to the court's drug-quantity calculation would be frivolous.

■ Sufficient evidence similarly supports the leadership adjustment under § 3B1.1(a). The government noted through the PSR and at the sentencing hearing that Klimas operated the drug conspiracy out of his home, had at least five distributors in several states, and enlisted his wife to maintain the drug ledgers. Klimas's actions met many of the factors relevant in assessing a leadership role: he held decision-making authority, recruited others into the organization, claimed the right to a larger share of the profits, planned and organized the distribution activities, and controlled the others. *See* U.S.S.G. § 3B1.1, comment. (n.2); *see Schuh*, 289 F.3d at 972–73. Although Klimas argued at sentencing and reasserts in his Rule 51(b) response that he was a novice drug dealer who could not have controlled the activities of more experienced dealers, the district court appropriately concluded that this contention was a

non-starter. Consequently, we agree that it would be frivolous for Klimas to argue that the upward adjustment was improper.

■ Counsel also correctly concludes that the final two potential challenges to Klimas's sentence would be frivolous. The two-level upward adjustment imposed by the district court for possessing a dangerous weapon was appropriate "unless it was clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n.3). The weapons–a loaded handgun, two shotguns, and a rifle–were found at Klimas's residence, where he also operated his drug organization. At sentencing Klimas argued that he used the guns for hunting, but we have previously noted that "guns found in close proximity to drug activity are presumptively connected to that activity," *United States v. Corral*, 324 F.3d 866, 873 (7th Cir.2003), and Klimas does not offer any evidence to the contrary. And although Klimas explains in his response that a downward departure was warranted because he had few arrests and little experience in the drug trade, had raised a family, and had voluntarily sought treatment for his drug addiction, a district court's decision to deny a downward departure is not subject to review unless it appears that the court misunderstood or misapplied the law. *See United States v. Johnson*, 289 F.3d 1034, 1043 (7th Cir.2002). As counsel correctly points out, the court considered Klimas's request but concluded that the case did not fall outside the heartland and so did not warrant a downward departure. Thus we would not review that decision.

■ Finally, in his Rule 51(b) response Klimas suggests that he could pursue a claim that counsel rendered ineffective assistance by coercing him to plead guilty. As an initial matter, Klimas's underlying premise that his plea was not voluntary is belied by his own statements at the change

of plea hearing, which, as noted above, are presumed truthful. *See Bridgeman*, 229 F.3d at 592. Moreover, Klimas explicitly stated at that hearing that he was satisfied with counsel's representation and that his plea was voluntary and not coerced. In any event, ineffective-assistance claims generally are inappropriate on direct appeal because determination of the matter requires evidence that is outside the trial record. *Massaro v. United States*, — U.S. —, —, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003); *Schuh*, 289 F.3d at 976. In this case resolving the claim would require examining evidence beyond the record, and thus Klimas would be better served by bringing it under 28 U.S.C. § 2255 if he desires. *United States v. Neeley*, 189 F.3d 670, 683 (7th Cir.1999).

For the foregoing reasons, we GRANT counsel's motion to withdraw and DISMISS the appeal.