# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1693

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRACY L. PARKER,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 CR 20072—**Michael P. McCuskey**, *Judge.*

———————

ARGUED FEBRUARY 20, 2004—DECIDED MAY 26, 2004

———————

Before FLAUM, *Chief Judge*, BAUER and MANION, *Circuit Judges.*

FLAUM, *Chief Judge*. Tracy L. Parker pled guilty to conspiracy to escape from the custody of the Attorney General in violation of 18 U.S.C. § 371 and to attempt to escape in violation 18 U.S.C. § 751(a). The district court found Parker guilty as charged and sentenced him to forty-eight months' imprisonment on each of the two counts of the indictment, with the sentences to run consecutively. In this appeal, Parker requests that this Court vacate his conviction and allow him to withdraw his plea of guilty, contending that the district court violated Federal Rules of Criminal

Procedure 11 by failing to inform him of its discretion to depart upwardly from the applicable sentencing guideline range. Additionally, Parker argues that the imposition of consecutive sentences for attempt to escape and conspiracy to escape violates the Double Jeopardy Clause, U.S. CONST., amend. V, and requests that this Court remand to the district court with a direction to dismiss one count of the indictment with prejudice. For the reasons discussed below we affirm Parker's conviction.

## I.  Background

In September 2000, Tracy L. Parker was in federal custody awaiting sentencing as an felon in possession of a firearm in the Central District of Illinois. Parker had previously pled guilty to that charge. At the same time, Parker's related burglary charge was pending in state court in Edgar County, Illinois. While awaiting the federal sentencing, Parker was being held with other federal detainees at the DeWitt County Jail in Illinois.

Parker confided in Aaron French, a fellow federal detainee at the DeWitt County Jail, that he planned to escape when sent back to the Edgar County Courthouse for sentencing for the burglary conviction. Parker explained that his friend, Derek Sronce, would be willing to bring a gun to the courthouse on the day of his sentencing, but that Sronce needed to acquire a gun in order to do so. French arranged for a friend to deliver French's Smith & Wesson .357 revolver and ammunition to Sronce.

On September 27, 2000, Parker wrote a letter to Sronce to complain that Sronce had failed to meet French's friend for the gun delivery, and to urge Sronce to get the gun from French's friend. The next day, Parker was sentenced according to the federal Sentencing Guidelines on his federal gun charge, receiving a reduction to the mandatory minimum for providing substantial assistance pursuant to

U.S.S.G. § 5K1.1. The district court admonished Parker that he was a strong candidate for an upward departure due to his extensive criminal history and warned him that he faced a severe sentence if he ever returned to the district court on criminal charges.

On October 4, 2000, Parker wrote another letter to Sronce from the DeWitt County Jail instructing him to obtain the gun from French's friend on October 8. Sronce wrote back to indicate that October 8 would be a convenient day to accept the delivery. On October 8, French's friend met Sronce at Sronce's home and gave him an unloaded Smith & Wesson .357 handgun in a plastic bag.

Parker was scheduled to plead guilty to the pending state burglary charge and to be sentenced at the courthouse on Friday, October 13, 2000. Parker requested a continuance to October 18, 2000, the following Wednesday, explaining that he wished his mother to be present at the sentencing, but that she could not be present until that time. In fact, Parker had requested the continuance not to accommodate his mother's travels, as she was actually in the vicinity on October 13. Instead, he sought the continuance because he believed that his escape plan was less likely to succeed on a Friday than on a Wednesday: Parker knew that it was the practice of the Edgar County jail to send two officers to the courthouse with inmates on Fridays, but to send only one officer to the courthouse on Wednesdays.

Sronce visited Parker at the Edgar County Jail on October 13, 2000. During the visit, Parker instructed Sronce to place the gun near or behind the radiator located by the basement door of the courthouse. Parker explained that he would use the gun to escape after his court appearance on the following Wednesday.

Sronce brought the gun to the courthouse on October 18, 2000, according to the plan. When Sronce realized that two

law enforcement officers were on duty at the courthouse, Sronce decided to abort the plan. Sronce did not leave the gun for Parker by the radiator or anywhere else in the courthouse. Following the proceedings, Parker was transferred back to the DeWitt County Jail to await further transfer to the Federal Bureau of Prisons. The following day, Sronce sold the gun to a gun collector.

On October 20, 2000, the DeWitt County Jail intercepted a letter written by Sronce to Parker in which Sronce apologized for the failed escape attempt. Sronce explained that he had deviated from the plan because two law enforcement officers were present at the courthouse on October 18, and Parker had previously directed him to forgo the gun drop under those circumstances. Parker wrote a letter in response expressing his disappointment and instructing Sronce to give the gun and shells to Parker's mother.

In September 2002, a federal grand jury charged Parker in a two-count indictment with conspiracy to escape in violation of 18 U.S.C. § 371 and attempt to escape in violation of 18 U.S.C. § 751(a). On October 30, 2002, Parker pled guilty to both counts without the benefit of a plea agreement. The district judge engaged Parker in a fifty-five minute change of plea colloquy. The district judge remarked that Parker had recently appeared before him for sentencing in a different matter, and that Parker's previous sentence was reached "under the sentencing guidelines." During the plea colloquy, the district court confirmed that neither Parker nor defense counsel had any intention of moving for a downward departure in the present case. The district court informed Parker of the statutory maximum possible punishment of each of the two counts charged in the indictment. On each count, the court explained, Parker could lawfully be sentenced to five years' imprisonment, in addition to a fine if Parker could afford to pay it, three years' supervised release, and a special assessment. The district court asked Parker whether he understood that his

guilty plea would change his offense level and criminal history category for sentencing "under the guidelines," and Parker answered in the affirmative. The district court also asked Parker whether he agreed to "let your presentence report determine your offense level, your criminal history calculation, and then put yourself before me for sentencing within the guidelines?" Parker assented. The district court repeatedly inquired whether Parker understood that no promise had been made regarding his sentence "other than it's within the guidelines," each time Parker answered "[y]es." Parker indicated that he understood that the district court could sentence him "to the maximum within the guidelines irrespective of the[ ] recommendations" of government and defense counsel.

On December 13, 2002, the probation office issued a presentence report which stated that the district court could depart from the otherwise applicable guideline range on the basis of Parker's criminal history. Later that month, the United States indicated by letter that it believed an upward departure was appropriate based on factors including and additional to those indicated in the presentence report. On January 6, 2003, Parker objected to the upward departure suggested in the presentence report and requested a downward departure. The United States filed a commentary on sentencing factors on January 13, 2003, requesting upward departures on the basis of: (1) Parker's understated criminal history; (2) Parker's intent to utilize a gun during the attempted escape; and (3) Parker's downward departure in his previous case, which was granted during the pendency of the escape conspiracy. On January 17, 2003, Parker filed a commentary on sentencing factors, wherein he objected to the United States' requests for upward departures on the grounds that the upward departures could "not be satisfied by imposing consecutive sentences" for the two convictions due to the grouping criteria of the sentencing guidelines, U.S.S.G. § 3D1.2, and further that the upward departures suggested were not merited by the

facts of Parker's case. Parker also argued that a U.S.S.G. § 5K2.0 downward departure for substantial assistance was possible despite the absence of a motion from the United States. In neither the January 6 nor January 17 commentaries did Parker argue that the district court had foreclosed the option of upward departures due to its promise to Parker of a sentence "within the guidelines," nor did Parker move to withdraw his guilty plea.

At the January 17, 2003 sentencing hearing, the district court defined the requests for upward and downward departures and allowed both parties to argue extensively in regard to the proposals. Defense counsel urged that the grouping rules of the guidelines precluded the district court from achieving the ultimate guideline sentence through the imposition of consecutive sentences, even if the district court decided that an upward departure was merited. At the same time, defense counsel specifically disclaimed any intention to challenge the consecutive sentences on the basis of the Double Jeopardy Clause, U.S. CONST., amend. V. Before concluding the hearing, the district judge inquired whether Parker had any objections to the presentence report independent of those presented by his attorney and also offered Parker the opportunity to address the district court in allocution. The district court indicated that it would depart upward, but continued the sentencing hearing to March 7, 2003 to allow the parties to file additional commentary.

The United States filed a supplemental commentary on sentencing factors on January 31, 2003, wherein it further argued that the district court was authorized by U.S.S.G. § 4A1.3 and U.S.S.G. § 5K2.0 to depart upward from the otherwise applicable guideline range due to the specific facts of Parker's attempt and conspiracy to escape, the unwarranted downward departure he received in his previous federal case, and Parker's extensive criminal history. The United States also argued that the district court should

impose consecutive sentences on the two counts of conviction. Parker responded on February 7, 2003, again arguing that the facts did not merit upward departures, that the upward departures could not be achieved by consecutive sentences, and that a downward departure was appropriate. The defense did not argue that the terms of the plea colloquy precluded the district court from departing upward from the otherwise applicable sentencing range, nor did Parker move to withdraw his guilty plea at that time.

On March 7, 2003, the district court issued its written ruling in open court. The district court determined that Parker's initial offense level was fourteen and his criminal history category was VI, meriting a sentence of thirty-seven to forty-six months. The district court found that an upward departure of seven levels was warranted: five levels to reflect the seriousness of Parker's past criminal conduct and recidivist nature, followed by two additional levels due to Parker's intention to utilize a gun during the escape. The resulting offense level was twenty-one, while the criminal history category remained VI, leading to a guideline sentencing range of seventy-seven to ninety-six months. The district court sentenced Parker to ninety-six months of imprisonment, consisting of a forty-eight-month term for each count, the terms to be served consecutively. In addition, the district court ordered three years of supervised release and a $200 special assessment. Parker did not request to withdraw his guilty plea prior to his sentence being imposed by the district court. Parker filed a notice of appeal from the judgment on March 14, 2003.

## II. Analysis

Parker raises two issues on appeal. First, Parker maintains that the district judge did not comply with Rule 11 of the Federal Rules of Criminal Procedure because he did not

include in the change of plea colloquy an admonishment that the district court may, in the exercise of its discretion, depart upward from the applicable sentencing guideline range. Because Parker made no objection to the district court's statements during the plea colloquy, and because Parker did not move to withdraw his plea in the district court, he may withdraw his plea only if he establishes that the district court plainly erred, affected his substantial rights, and seriously affected the fairness, integrity or reputation of judicial proceedings. *See United States v. Vonn*, 535 U.S. 55, 58-59, 63 (2002).

In relevant part, Rule 11(b)(1) requires that a district court "address the defendant personally in open court" before accepting a plea of guilty. Fed. R. Crim. P. 11(b)(1). "During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . . (M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances." Fed. R. Crim. P. 11(b)(1)(M). Parker maintains that the plea colloquy did not comply with Fed. R. Crim. P. 11(b)(1)(M) because the district court not only failed to adequately inform Parker of the possibility of upward departures, but also implied that his sentence would be within the applicable guideline range for his base offense level and criminal history category, absent any upward departures. Parker argues that the plea colloquy led him to believe that no upward departures were contemplated by the district court because the district court stated that Parker's sentence would be "within the guidelines," rather than "pursuant to the guidelines."

To demonstrate that the phrase "within the guidelines" typically means a sentence that is within the applicable guideline range, without any departures, Parker cites to U.S.S.G. § 1A1.1, where the Sentencing Commission employed the phrase "within the guidelines" to illustrate a sentence achieved absent departures. Parker also cites to

numerous circuit court opinions that employ the term "within the guidelines" to describe sentences within the applicable guideline range, absent departures. *See United States v. Tucker*, 892 F.2d 8, 11 (1st Cir. 1989); *United States v. Colon* 884 F.2d 1550, 1554 (2d Cir. 1989).

We agree with Parker that, in the context of a Rule 11 change of plea colloquy, a statement by the district court that a particular sentence would be reached "pursuant to the guidelines" would communicate with greater clarity the possibility of a departure from applicable guideline range than does an assertion that the sentence would be "within the guidelines." Additionally, the district court would have more precisely communicated this possibility if it had also paused to underscore its discretion under the guidelines to assign upward departures when a particular case presents atypical circumstances.

That said, we conclude that any potential for miscommunication arising from the district court's repeated use of the phrase "within the guidelines" was mitigated during the remainder of Parker's change of plea colloquy. Examined in context, it is clear that when the district court used the phrase "within the guidelines," the court invoked the guidelines as a whole. Contrary to Parker's view, as employed by the district court during the Rule 11 colloquy, the phrase "within the guidelines" was not in reference to the narrow guideline range applicable to Parker's base offense level and unmodified criminal history category. The district court did not indicate that Parker's sentence would be "within the applicable guideline range," nor did the district court suggest an intention to relinquish its discretion to depart from that range. Rather, the district court promised a sentence "within the guidelines" even while highlighting its authority to reject the recommendations of counsel regarding the calculation of Parker's base offense level and criminal history category. The district court also reminded Parker of the possibility of departures on two occasions:

first, the district judge mentioned that he could not recall whether Parker's previous federal sentence had involved a departure, and second, the district judge inquired whether the defense intended to move for any downward departures. Although these comments did not explicitly mention the possibility of upward departures, they adequately informed Parker of the district court's discretion to depart from the otherwise applicable guideline range, and therefore complied with the requirements of Fed. R. Crim. P. 11(b)(1)(M).

"The core concern in issue is whether [the defendant] . . . understood the consequences of his plea." *United States v. Mitchell*, 58 F.3d 1221, 1225 (7th Cir. 1995). During the plea colloquy, Parker indicated that he understood that the statutory maximum term of incarceration for each of the counts of the indictment was five years. His decision to enter a plea despite this warning demonstrates that Parker contemplated the possibility of a sentence exceeding the applicable guideline range, pre-departures, which was determined to be between thirty-seven and forty-six months. Therefore, because the "total circumstances surrounding the plea [demonstrate] that the defendant was informed of his rights and understood the consequences of his plea," *Id.* at 1224, we conclude that the purpose of Rule 11 was served and the district court did not plainly err in this case.

Further, any misleading statement during the plea colloquy of the potential sentence would not entitle Parker to withdraw his guilty plea because he has not shown a violation of his substantial rights. *See* Fed. R. Crim. P. 11(h); *Vonn*, 535 U.S. at 58-59, 63. This Court employs "a 'totality of the circumstances' analysis to determine whether any Rule 11 violations would have likely affected [the defendant's] willingness to plead guilty*." United States v. Martinez*, 289 F.3d 1023, 1029 (7th Cir. 2002). Factors appropriate for consideration include "whether the sentence the defendant actually received was within the warned range."

*United States v. Saenz*, 969 F.2d 294, 297 (7th Cir. 1992). As mentioned above, Parker was warned of a term of five years of imprisonment on each count. Parker was sentenced to a term of four years' imprisonment on each count: his prison term does not exceed that which the district court advised.

Second, "another factor we consider is whether the defendant would not have pleaded guilty if the error had not occurred." *Saenz*, 969 F.2d at 297. Even if Parker had misunderstood the district court during the change of plea colloquy, his actions demonstrate that he would have entered a plea of guilty even if the district court had more clearly suggested the possibility of upward departures from the applicable guideline range. After Parker received the presentence report and the United States' commentary on sentencing factors, Parker comprehended the strong possibility of a sentence reflecting an upward departure, as both the probation office and prosecution had encouraged the district court to depart upward. In response, Parker presented multiple arguments in opposition to the contemplated upward departures—he argued that the guidelines' grouping rules precluded the district court from achieving the ultimate guideline sentence through the imposition of consecutive sentences; that the methods that he had employed in the conspiracy and attempt to escape did not merit upward departures, and lastly that his criminal history did not merit an enhanced sentence—but he never argued before the district court that the terms of the plea colloquy foreclosed the imposition of upward departures. His decision to challenge the proposed departures on grounds other than his alleged misunderstanding of the phrase "within the guidelines" belies his claim that this misunderstanding was the basis of his decision to plead guilty. Further, in suggesting to the district court that it depart downward, Parker provided additional confirmation that he understood that the district court had authority to depart from the otherwise applicable guideline range.

Lastly, the overwhelming evidence of Parker's guilt precludes Parker from persuading us that the error effected his substantial rights. *See United States v. Kelly*, 337 F.3d 897, 905 (7th Cir. 2003). The evidence against Parker included his handwritten correspondence with Sronce describing the escape plan and the reasons for its failure, in addition to the recovery of the gun that Sronce had acquired for the purpose of facilitating the escape. With this inculpatory evidence, it is unlikely that Parker would have withdrawn his plea and faced a jury trial even if the district court had more cogently described the possibility of upward departures during the Rule 11 colloquy. As Parker was likely aware, the probable result of a jury trial was a verdict of guilty, and the decision to proceed with the trial would have deprived Parker of the three-level acceptance of responsibility reduction gained by the guilty plea. Therefore, we conclude that any unclear statement by the district court did not prejudice Parker's decision to plead guilty, and Parker's argument in favor of withdrawing his plea must fail.

The remaining issue that Parker raises on appeal concerns the consecutive nature of his sentences. Parker argues that the consecutive sentences for conspiracy to escape and attempt to escape are in violation of the Double Jeopardy Clause, U.S. CONST., amend. V. Because "double jeopardy is a personal right which if not affirmatively pleaded at the time of trial will be regarded as waived," *United States v. Buonomo*, 441 F.2d 922, 924 (7th Cir. 1970), we must first address the government's claim that Parker did not properly preserve this argument for appeal.

During the January 17, 2003 sentencing hearing, Parker specifically informed the district court that he would not pursue the double jeopardy argument. Defense counsel stated that "[w]hen both convictions involve precisely the same criminal conduct, . . . can you punish it twice? We're not saying that it's double jeopardy." In this comment,

defense counsel demonstrated that he had considered advancing a double jeopardy argument, but had ultimately rejected it. By explicitly disclaiming the double jeopardy argument, Parker deprived the district court of the opportunity to address the issue, and we therefore conclude that the argument was waived and is not reviewable on appeal. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver is the intentional relinquishment or abandonment of a known right) (internal quotations omitted).

### III.  Conclusion

For the foregoing reasons, we AFFIRM Parker's conviction.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*