In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3211

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH AUSTIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 13-cr-00761-1 — **Charles R. Norgle**, *Judge.*

ARGUED OCTOBER 22, 2018 — DECIDED OCTOBER 29, 2018

Before FLAUM, EASTERBROOK, and SCUDDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. Near the end of his jury trial, Keith Austin pleaded guilty to three counts of bank fraud, aggravated identity theft, and obstruction of justice. Austin now protests that his plea was not knowing and voluntary because the district court did not adequately discuss the Sentencing Guidelines and did not mention forfeiture. He also takes issue with the court's denial of the reduction for acceptance of responsibility and the use of the incorrect Guidelines range, as

well as the sufficiency of the evidence supporting the district court's loss calculation, restitution amount, and forfeiture order. For the reasons below, we affirm the court's acceptance of Austin's guilty plea, but we vacate Austin's sentence and remand for resentencing.

## I. Background

### A. Indictment and Plea of Guilty

In September 2013, the government indicted defendant Keith Austin, along with nine codefendants, for his role in an eight-year mortgage-fraud scheme. The indictment charged Austin with three counts of bank fraud, in violation of 18 U.S.C. § 1344; six counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(l); and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). According to the indictment, Austin allegedly participated in a scheme to fraudulently obtain fifty-two mortgage loans from lenders, which resulted in losses on the mortgage loans of over $8 million.

Austin was the only member of the scheme to go to trial; his nine codefendants pleaded guilty. On April 22, 2015, the sixth day of the jury trial, Austin informed the court that he wished to change his plea. Austin did not have a written plea agreement or a plea declaration; rather, the district court confirmed with Austin's counsel that it would be "an oral blind plea" to counts IX, X, and XI of the indictment for bank fraud, aggravated identity theft, and obstruction of justice, respectively, and that the government would dismiss the remaining counts. As part of the plea colloquy, the court first asked the

government to indicate the maximum penalties and fines applicable to the three offenses and confirmed Austin's understanding of those penalties. The court then asked questions to determine Austin's competence to knowingly change his plea and explained Austin's trial rights and what he would be waiving by pleading guilty. Next, the court questioned Austin about having sufficient time to discuss the trial and his decision to plead guilty with his attorney.

The government presented, and Austin admitted, the factual basis for his plea to Counts IX, X, and XI. The court then turned to the Federal Sentencing Guidelines, inquiring:

> Are you also aware that at the time of the sentencing the [c]ourt will be looking at the Federal Sentencing Guidelines? They serve as guides to the [c]ourt, but are not mandatory. Do you understand that? … Has [your attorney] explained to you the issues and application involving the Federal Sentencing Guidelines?

Austin confirmed that he had spoken to his attorney about the Guidelines: "I asked several questions. He explained it to me." Finally, after confirming Austin had not been threatened or coerced into pleading guilty, the court accepted Austin's guilty plea to Counts XI, X, and XI. At no point did the court discuss forfeiture; neither Austin's counsel nor the government informed the court that it overlooked any portions of the colloquy.

**B. Sentencing**

Austin appeared for sentencing on August 15, 2016, with new counsel who had not submitted a sentencing memorandum. The probation office had submitted a presentence report

("PSR") in June 2015 calculating a Guidelines sentencing range of 188–235 months, based on the 2014 Guidelines manual. The PSR included an offense level of 35, calculated from a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1), a two-level enhancement for the number of victims, a four-level enhancement for role in the offense, a two-level enhancement for obstruction of justice, and a twenty-level enhancement for the loss amount of over $8.6 million per the 2014 version of U.S.S.G. § 2B1.1(b)(1)(K). The PSR did not recommend an adjustment for acceptance of responsibility. Based on his prior convictions for burglary in 1995 and misdemeanor battery in 1999, Austin was in criminal history category II.

Although the PSR added a twenty-level enhancement for loss amount based on the 2014 Guidelines, a new Guidelines manual took effect on November 1, 2015, after the probation department submitted the PSR but prior to sentencing. Under the 2015 manual, a loss of $8.6 million requires an eighteen-level adjustment, not a twenty-level one. The parties agree the 2015 manual that was in effect at the time of sentencing is the applicable manual. However, no one caught the error at the time of sentencing.

After denying Austin's motion for a competency evaluation and request to postpone the sentencing, the court began the sentencing hearing by reviewing the character letters submitted on Austin's behalf. The court considered objections to the PSR, the only one being the government's request for an enhancement for use of sophisticated means, which the court overruled. Next, the parties presented argument under the 18 U.S.C. § 3553(a) factors: Austin argued for a sentence of 60 months' imprisonment based on his positive characteristics and reduced risk of recidivism due to his age and the age of

his prior convictions. The government presented a loss chart summarizing the "losses attendant to this fraud and the particular properties for which [] Austin is responsible."[1] The total loss reflected in the loss chart was over $9.1 million, higher than the $8.6 million reflected in the PSR, due to the additional properties sold at a loss or reassessed since the initial calculation. The government stated the loss amount "is based on these 50 properties that are mentioned in the indictment and which are laid out in this loss chart." Austin did not object to any aspect of the loss chart or loss amount.

Although the PSR did not recommend the two-level reduction for acceptance of responsibility, Austin's counsel argued that Austin had accepted responsibility by pleading guilty prior to the jury's verdict. However, because Austin "put the government through its task," and "the case was merely at the point of concluding when the defendant then decided to enter a … plea of guilty," the court determined Austin's acceptance "was not extraordinary, and certainly [it] is not appropriate in this case to give him two points for acceptance of responsibility."

In weighing the § 3553(a) factors in mitigation, the court noted the lengthy period of time since Austin's last conviction and the support of his friends and family. In aggravation, however, the court observed that there was "evidence in this case, in which as many as 50 or 52 transactions occurred for which the defendant is responsible" as well as the "extremely large" restitution amount of over $9.1 million. The court concluded a sentence within the Guidelines range of 188–235

---

[1] The loss chart is available at ECF No. 315 on the district court's docket.

months was too "heavy" but that it still must "impose a sentence that does not denigrate the seriousness of what [] Austin has done." It then imposed a sentence of 120 months on Counts IX and XI, to be served concurrently, and 24 months on Count X, to be served consecutively, for a total of 144 months' imprisonment. As for supervised release, the court imposed 2 years on Counts IX and X and 1 year on count XI, all to be served concurrently. The court did not impose a fine due to Austin's inability to pay, but the court imposed the mandatory special assessment of $300, $100 per each count of conviction.

The government moved for an order of forfeiture for $4,374,070, including Austin's assets seized in a search—a 2007 Lexus LS460 sedan and $6,800 in cash. Austin did not object, and the court entered the forfeiture order for the assets. The court also ordered restitution in the amount of loss— $9,134,900—imposed jointly and severally with Austin's codefendants. At the end of the sentencing hearing, the government prompted the court to accept and adopt the findings in the PSR. The court then formally "accept[ed] the findings [of] fact [and] the conclusions of law presented in the probation department's presentence investigation report."

## II. Discussion

### A. Rule 11 Colloquy

Because Austin did not object to the adequacy of the Rule 11 plea colloquy or move to withdraw his guilty plea as involuntary at the time of his sentencing, the parties agree that this Court reviews for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008). To establish plain error, appellant bears the burden of

showing that the district court (1) committed error; (2) that is plain or obvious; (3) that affects his substantial rights; and (4) that "seriously impugn[es] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gill*, 824 F.3d 653, 661 (7th Cir. 2016) (citation and internal quotation marks omitted).

"As a practical matter, it is incredibly difficult for a defendant to prove that a district court plainly erred when accepting a guilty plea." *United States v. Villarreal-Tamayo*, 467 F.3d 630, 632 (7th Cir. 2006). Before accepting a guilty plea, a district court "must inform the defendant of, and determine that the defendant understands," a litany of subjects. Fed. R. Crim. P. 11(b)(l). Austin asserts that the court's Rule 11 colloquy was deficient with respect to two of those subjects—the Sentencing Guidelines and forfeiture. Under Rule 11(b)(1)(M), the court must inform the defendant that "in determining a sentence, the court [i]s obligat[ed] to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)."

Here, the court informed Austin that "at the time of the sentencing" it would "be looking at the Federal Sentencing Guidelines" and that "[t]hey serve as guides to the [c]ourt, but are not mandatory." After checking that Austin understood, the court confirmed that Austin had asked questions of his counsel regarding the "issues and application" of the Guidelines and that Austin's counsel "explained it to [him]." The court stated it would look to the Guidelines in determining Austin's sentence, but the Guidelines were not mandatory. And the court made sure that Austin had the chance to discuss the "issues and application involving" the Guidelines with his

counsel prior to entering his guilty plea. Moreover, the court reviewed and made sure Austin understood the statutory maximums—30 years on Count IX, 2 years mandatory to run consecutively to any other term on Count X, and 20 years on Count XI. "His decision to enter a plea despite this warning demonstrates that [Austin] contemplated the possibility of a sentence exceeding the applicable guideline range … Therefore, because the 'total circumstances surrounding the plea [demonstrate] that the defendant was informed of his rights and understood the consequences of his plea,'" we conclude the court's discussion of the Sentencing Guidelines was sufficient under Rule 11, and it did not plainly err. *See United States v. Parker*, 368 F.3d 963, 968 (7th Cir. 2004) (second alteration in original) (quoting *United States v. Mitchell*, 58 F.3d 1221, 1224 (7th Cir. 1995)); *cf. Griffin*, 521 F.3d at 729 (upholding guilty plea where "although the court informed [defendant] that he would 'be sentenced under the appropriate [Sentencing] Guidelines,' the court did not explain that it had the authority 'to depart' from the applicable guidelines range" (second alteration in original) (quoting Fed. R. Crim. P. 11(b)(1)(M))).

During the plea colloquy, the district court is also required to inform the defendant of "any applicable forfeiture." Fed. R. Crim. P. 11(b)(l)(J). There is no dispute that the court did not mention forfeiture during the plea colloquy and that neither counsel for Austin nor the government alerted the court to its omission. Regardless, courts are not required to strictly comply with Rule 11 to ensure that a defendant has knowingly and voluntarily pleaded guilty; as we have noted, "'plain error' is not an automatic synonym for 'no error.'" *United States v. Sura*, 511 F.3d 654, 660 (7th Cir. 2007). Thus, Austin "must do more than show that the Rule was technically violated. He must show that his guilty plea was involuntary and that he

would not have entered it on the basis of the record as a whole." *Id.*

Austin argues the totality of circumstances indicate he would not have pleaded guilty had the court explained that he faced forfeiture. *See Parker*, 368 F.3d at 968 (the "Court employs 'a "totality of the circumstances" analysis to determine whether any Rule 11 violations would have likely affected [the defendant's] willingness to plead guilty.'" (alteration in original) (quoting *United States v. Martinez*, 289 F.3d 1023, 1029 (7th Cir. 2002)). Specifically, Austin points to three factors that he argues show he would not have pleaded guilty—"the lack of a written plea agreement, the lack of benefit to [] Austin to plead guilty, and the rushed, mid-trial plea." The lack of a written plea agreement and mid-trial plea are nonstarters; defendants routinely plead guilty without a written plea agreement. While a written plea agreement may include details like an agreed recommended sentence or forfeiture amount, the lack of a written plea agreement itself is not evidence that Austin would not have pleaded guilty. Nor is the fact that Austin changed his mind mid-trial: That the "the terms of the 'deal' were being worked out in the hallway as the jury waited," as Austin characterizes the proceeding, is not abnormal and does not undermine the integrity of the judicial process. It merely reflects the reality "that plea bargains have become [] central to the administration of the criminal justice system." *Missouri v. Frye*, 566 U.S. 134, 143 (2012).

Austin's argument that he lacked a benefit fares no better. Indicating a lack of proper process, Austin argues that he "gained nothing from pleading guilty to only three of the eleven counts; all of the other counts would have been grouped with Counts Nine and Eleven at sentencing pursuant

to U.S.S.G. § 3D1.2(d), leaving his ultimate Guidelines range essentially unaffected." However, we have held that a dismissal of counts can be a benefit to a defendant. *See Phillips v. United States*, 668 F.3d 433, 434 (7th Cir. 2012) (noting that the prior dismissal of nine out of ten counts provided a substantial benefit to the defendant in exchange for an appellate waiver). Perhaps Austin saw the writing on the wall after five days of trial and hoped that in exchange for his guilty plea, the court would go easier on him at sentencing. Perhaps he thought he would get credit for accepting responsibility by pleading guilty. As he notes, a "defendant may have many reasons for pleading guilty at the particular time that he or she chooses to do so," but the deficiencies Austin has asserted in the plea colloquy do not indicate that he would have made a different decision with more information about forfeiture. And under plain-error review, we require more than unsupported assertions; we have held that "a defendant must demonstrate a reasonable probability that, but for the court's plain error, he would not have entered the plea." *United States v. Dyer*, 892 F.3d 910, 914 (7th Cir. 2018). Austin did not provide any evidence he would not have pleaded guilty had the court advised him of any applicable forfeiture, other than counsel's argument that he did not understand the consequences of his plea.[2] We thus reject Austin's unsupported assertion of error.

---

[2] Because Austin did not move to withdraw his guilty plea in the sentencing court, we do not have the benefit of an affidavit from Austin affirming that he would not have pleaded guilty had the court properly advised him of potential forfeiture. All we have are counsel's arguments, which are not evidence. *United States v. Useni*, 516 F.3d 634, 653 (7th Cir. 2008).

### B. Sentencing Issues

Austin raises several issues with his sentence, including the district court's use of the wrong Guidelines range and errors in the district court's calculation of restitution, loss amount, and forfeiture, among others.

The parties agree that remand is necessary to correct the restitution order; however, the parties present different theories regarding the appropriate restitution calculation. At sentencing, the government presented a loss chart including fifty properties for which the government contended Austin was responsible, totaling $9,134,900. The government now admits that its chart included financial institutions as "victims" that the bank fraud statute at the time of Austin's conduct did not define as "financial institutions." *See* 18 U.S.C. § 20(10) (defining a mortgage lending business). The government acknowledges that "possibly as many as 19 of the properties included on the government's loss chart did not have lenders that qualified as financial institutions on the respective closings. As a result, the losses for those properties, totaling approximately $3 million, should not have been included in the restitution."

Austin, on the other hand, presents a different approach regarding the proper calculation of the restitution award: He argues that he should only be required to pay restitution for losses caused by the counts to which he pleaded guilty, Counts IX, X, and XI, not all of the properties on the government's loss chart. Austin claims that the bank fraud "scheme" to which he pleaded guilty only involved one property and one financial institution and that he cannot be ordered to pay restitution for all of the loans described in the indictment (or, under the government's current position, for all of the loans with lenders that qualified as financial institutions at the time

of Austin's offense conduct). In light of the parties' recogni-
tion of the need for remand, we do not address the issue.

With a remand necessary for the recalculation of restitu-
tion, the other issues Austin raises can be revisited upon re-
sentencing.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's
acceptance of Austin's guilty plea and VACATE Austin's sen-
tence and REMAND for resentencing.